IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-00991-JLK

ALBERT MICHAEL MURRY,

    Plaintiff,

v.

OCWEN LOAN SERVICING, LLC, and
WELLS FARGO BANK, N.A., as Trustee for the Certificate Holders of Park Place Securities, Inc., Asset-Backed Pass-Through Certificates, Series 2005-WCH1,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Kane, J.

    This case was reassigned to me because Judge R. Brooke Jackson disclosed that either he or his wife owned stock in Defendant Wells Fargo Bank, N.A. ("Wells Fargo") during the time he presided over the case. Although Judge Jackson has recused, he did so after ruling on the merits and entering final judgment in favor of Defendants Wells Fargo and Ocwen Loan Servicing, LLC ("Ocwen"), and against Plaintiff Albert Michael Murry, who appears pro se. In response to Judge Jackson's disclosure of the grounds for his disqualification, Mr. Murry requests that the "judgment in the case be vacated and . . . the case be[] re-opened for further proceedings." Resp. to Letter from Clerk at 2, ECF No. 30. For the reasons stated in this Order, I find the circumstances here do not warrant vacatur as there was no prejudicial error in the judgment or rulings against Mr. Murry.

    In 2004, Mr. Murry executed a promissory note and a deed of trust encumbering his real property in Grand Junction, Colorado. The deed was later assigned to Wells Fargo. Ocwen, which was servicing the loan, sent Mr. Murry a notice of default in early 2013. In response, Mr.

1

Murry mailed a letter to Ocwen on May 6, 2013, purporting to rescind his home loan pursuant to the Truth in Lending Act ("TILA").[1] *See* Letter of Loan Rescission at 1, ECF No. 16-1. The following year, foreclosure proceedings against Mr. Murry's property were initiated by Wells Fargo, as it was in possession of the original mortgage documents. *See* Note & Deed of Trust, ECF No. 12-1. The Mesa County District Court issued an Order Authorizing Sale of the property on October 10, 2014. *See* Colo. R. Civ. P. 120 (addressing process for seeking court order authorizing foreclosure sale under a power of sale contained in a deed of trust).

To prevent foreclosure, Mr. Murry filed the present suit. He asserted six claims against Defendants for:

1. Declaratory judgment that Defendants had no legal interest in the property;

2. Declaratory judgment that the note and deed were rescinded by operation of law;

3. Wrongful foreclosure;

4. Mortgage fraud;

5. Violation of 42 U.S.C. § 1985(3), which prohibits conspiracies to violate civil rights when there is "some racial, or perhaps otherwise class-based, invidiously discriminatory animus," behind the conspirators' actions, *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); and

6. Fraud on the court.

*See* Compl. at 6-10, 13-14, ECF No. 1. Mr. Murry did not dispute that he was in default on his mortgage. *Id*. at 5. Instead, he argued Defendants had no legal basis to seek foreclosure. In the Order accompanying his Final Judgment, Judge Jackson found each of Mr. Murry's substantive claims subject to dismissal under Federal Rule of Civil Procedure 12(b)(6). 2/21/2017 Order at 8, ECF No. 18. Mr. Murry appealed the judgment against him, but the Tenth Circuit dismissed his appeal as untimely.

---

[1] Subsection 1635(a) of Title 15 of the U.S. Code sets out the TILA's right of rescission.

On November 8, 2021, the Clerk of the Court notified Mr. Murry of Judge Jackson's recusal and the reason therefor, explaining that the "stock ownership would have required recusal under the Code of Conduct for United States Judges." Letter from Clerk at 1, ECF No. 28. Indeed, the Code of Conduct provides: "A judge should . . . act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Code of Conduct for United States Judges, Canon 2(A). This provision is advisory and admonitory as reflected in the word "should." More to the point, and binding as a matter of law, is the statutory provision, 28 U.S.C. § 455(a), which states "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The word "shall" makes this statute mandatory rather than advisory. Section 455(a) can be violated without knowledge of a disqualifying circumstance, though a "judge's lack of knowledge . . . may bear on the question of remedy." *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 859 (1988).

Section 455(b) specifically compels a judge to disqualify himself if either he or his spouse "has a financial interest . . . in a party to the proceeding." It matters not how small the ownership interest is, or how trivial it might be in the context of the judge's financial affairs, as § 455(b) applies to any financial interest, "however small." *Id*. § 455(d)(4). Additionally, § 455(c) states: "A judge should inform himself about his personal and fiduciary financial interests, and make a reasonable effort to inform himself about the personal financial interests of his spouse."

Pursuant to these provisions, Judge Jackson should have recused from this case upon its assignment to him without taking any other action beforehand. Nevertheless, he recused in accordance with Canon 3(C)(1) of the aforementioned Code once the ownership of Wells Fargo stock was brought to his attention. *See* Order of Recusal, ECF No. 33.

The Clerk's letter regarding the grounds for recusal invited Mr. Murry to submit a response and advised that any such response would be considered by another judge of this court without the participation of Judge Jackson. On December 10, 2021, Mr. Murry filed a timely response requesting, *inter alia*, that Judge Jackson's "published opinion . . . be withdrawn and quashed" and "that this case be reopened." Resp. to Letter from Clerk at 2.

In *Liljeberg*, the Supreme Court explained that "Section 455 does not, on its own, authorize the reopening of closed litigation. . . . [Instead,] Federal Rules of Civil Procedure 60(b) provides a procedure whereby, in appropriate cases, a party may be relieved of a final judgment." 486 U.S. at 863. I therefore construe Mr. Murry's letter as a motion to vacate judgment pursuant to Rule 60(b). *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("A pro se litigant's pleadings are to be construed liberally . . . .").

Relief under Rule 60(b) is discretionary. *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991). The Rule lists six grounds for relief from a judgment or order. Only the sixth ground—the catch-all category—is applicable here. *See* Fed. R. Civ. P. 60(b)(6) (applying the rule to "any other reason that justifies relief"). "Rule [60(b)(6)] does not particularize the factors that justify relief, but . . . it provides courts with authority adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice, while also cautioning that it should only be applied in extraordinary circumstances." *Liljeberg*, 486 U.S. at 863-64 (internal quotation marks and citations omitted).

Following the challenge brought by Mr. Murry and reassignment of this case to me, it is incumbent upon me to review the case *de novo*[2] to confirm that no error affected Mr. Murry's

---

[2] A *de novo* review means the reviewing court "uses the trial court's record but reviews the evidence and law without deference to the trial court's rulings." *Appeal De Novo*, Black's Law Dictionary (11th ed. 2019).

4

substantial rights. An error under § 455(b) occurred when Judge Jackson failed to disclose the stock ownership and recuse from the case immediately upon its having been drawn to him by the Clerk's Office. The purpose of my review is to determine whether that error was prejudicial to Mr. Murry.[3]

The District Court Docket in this case contains 33 entries beginning with the filing of the Complaint on May 2, 2016, and ending with Judge Jackson's Order of Recusal on January 11, 2022. Judge Jackson made no findings of fact on contested matters of evidence. And while he commented on the credibility of the affidavits submitted by Mr. Murry,[4] Judge Jackson's rulings could not have been impacted by any bias. The Final Judgment was based on application of clear law to undisputed matters in the record.

---

[3] In considering violations of 28 U.S.C. § 455(a), the Supreme Court has directed courts to consider "the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process." *Liljeberg*, 486 U.S. at 862; *see also Harris v. Champion*, 15 F.3d 1538, 1571 (10th Cir. 1994) (extending the *Liljeberg* analysis to violations of § 455(b)). In conducting my review, I draw a careful distinction between the usual standard of "harmless error," i.e., an error or defect that does not affect a party's substantial interest, and the factors articulated by the Supreme Court. I do so because any violation of § 455 causes harm to the integrity of the judicial process and can impair public confidence in the judicial system even when it is promptly corrected. Afterall, "[t]here are few characteristics of a judiciary more cherished and indispensable to justice than the characteristic of impartiality." *United States v. Greenspan*, 26 F.3d 1001, 1007 (10th Cir. 1994). However, under the circumstances here—in particular, Judge Jackson's lack of awareness of the grounds for disqualification during the time he presided over the case—and in the interest of finality, my review is focused on whether the belatedly disclosed stock ownership was prejudicial to Mr. Murry. *See Liljeberg*, 486 U.S. at 873 (Rehnquist, C.J., dissenting) ("[A] very strict interpretation of Rule 60(b) is essential if the finality of judgments is to be preserved.")

[4] I concur with Judge Jackson's assessment that the affidavits were "unnecessary evidentiary material that is inappropriate at the pleadings stage." 2/21/2017 Order at 1 n.1; *see Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991) ("The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.").

While Mr. Murry brought six claims against Wells Fargo and Ocwen, his case primarily hinges on two legal arguments:[5] First, his assertion that "the Note and Deed of Trust in this matter are void by operation of law due to [the TILA] Rescission," *see* Resp. to Mot. to Dismiss at 11, ECF No. 16, and second, that Defendants had no legal right to seek foreclosure, *see* Compl. at 16.

Mr. Murry's first contention—that he "perfected" a valid rescission of his loan—is pure legal fiction. Compl. at 13. To begin, the statute upon which Mr. Murry relies does not apply to residential mortgage transactions. 15 U.S.C. §§ 1602(x), 1635(e)(1). But even if it did apply to loans such as Mr. Murry's, "[a]n obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first." *Id.* § 1635(f). The date of consummation of Mr. Murry's loan is November 2, 2004. *See* Note & Deed of Trust at 2, 10. Any right to rescission under TILA's terms expired on November 2, 2007—years before Mr. Murry mailed his letter to Ocwen. Incidentally, this is confirmed by *Jesinoski v. Countrywide Home Loans Inc.*, 574 U.S. 259 (2015), the very case upon which Mr. Murry relies. *See* Resp. to Mot. to Dismiss at 2, 5, 7, 9, 11. In *Jesinoski*, the Supreme Court considered a borrower's right to rescind a loan related to the refinance of a home mortgage.[6] The Court reiterated that there is "no federal right to rescind, defensively or otherwise, after the 3-

---

[5] Mr. Murry's conspiracy claim was dismissed on somewhat unrelated grounds. Judge Jackson found that Mr. Murry had not stated a plausible claim under 42 U.S.C. § 1985(3) because he did not "allege racial or other class-based discrimination," as required by Supreme Court precedent. 2/21/2017 Order at 7. I agree entirely with that analysis; dismissal of that claim was necessary as a matter of law.

[6] While residential mortgage transactions are excluded from TILA's rescission provisions, refinancing transactions are only exempted when there are "no new advances" and when they involve an "extension of credit by the same creditor secured by an interest in the same property." 15 U.S.C. § 1635(e)(2).

year period of § 1635(f) has run." *Jesinoski*, 574 U.S. at 262 (quoting *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 419 (1998)).

Mr. Murry's second contention can also be addressed without recourse to subjective determinations or discretionary findings. Mr. Murry asserts Defendants had no right to foreclose on his home because "Wells Fargo N.A. did not purchase good title." Compl. at 7. He based this argument on the assertion that "Ocwen is NOT the Servicer for Wells Fargo" and that, in 2014, his deed of trust was assigned to two companies that were no longer in existence before being assigned to Wells Fargo. *Id.* at 11-12. For purposes of this review, I assume Mr. Murry's assertions are true. Even so, under Colorado law, a person in possession of the original evidence of debt is the lawful "holder" of that debt and, as such, has authority to foreclose. Colo. Rev. Stat. § 4-1-201(b)(20); *see also id.* § 4-3-104 (defining a promissory note as a negotiable instrument that is freely assignable). As the holder of the promissory note and deed of trust, Wells Fargo was well within its rights to seek an Order Authorizing Sale pursuant to Colorado Rule of Civil Procedure 120. *See also Columbus Investments v. Lewis*, 48 P.3d 1222, 1226 (Colo. 2002) ("The transfer or assignment of a negotiable promissory note carries with it, as an incident, the deed of trust or mortgage upon real estate . . . that secure[s] its payment.").

Upon completion of an independent and comprehensive review of the orders and rulings in this case, I find that the undisclosed ownership of Wells Fargo stock by Judge Jackson or his wife could not have had any influence on the outcome of this case. As such, Mr. Murry could not have been harmed by Judge Jackson's untimely recusal, and the extraordinary relief he seeks is not justified. Consequently, Mr. Murry's Motion to Vacate (ECF No. 30) is DENIED.

DATED this 21st day of January, 2022.

_____
JOHN L. KANE
SENIOR U.S. DISTRICT JUDGE